UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-60413-CV-HURLEY/HOPKINS

COPANS MOTORS, INC. d/b/a
CHAMPION PORSCHE, et al.,

    Plaintiff,

v.

PORSCHE CARS NORTH AMERICA,
INC.,

    Defendant.
_____/

## ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** comes before the Court upon Defendant Porsche Cars North America, Inc.'s ("Porsche") Motion to Dismiss [ECF No. 18] Counts IV through IX of the Complaint by Plaintiffs Copans Motors, Inc., d/b/a Champion Porsche, and Copans Motors, Inc., in the name of the Florida Department of Highway Safety and Motor Vehicles and State of Florida for the use and benefit of Copans Motors, Inc. (collectively, "Champion"), for violation of the Florida Automobile Dealers Act, Fla. Stat. § 320.64(18) (Count IV–V), tortious interference with a business relationship (Count VI), violation of the Florida Deceptive Unfair Trade Practices Act, Fla. Stat. § 501.204 (Count VII), breach of contract (Count VIII), and breach of the implied covenant of good faith and fair dealing (Count IX).

## I.    JURISDICTION

Champion is a Florida corporation with its principal place of business in Florida. Porsche is a Delaware corporation with its principal place of business in Georgia. The parties are diverse,

and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  On January 29, 2014 Champion filed a summons and complaint against Porsche in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, Case No. CACE 14001928.  Porsche filed its notice of removal on February 19, 2014.  28 U.S.C. § 1446(b).

## II.   BACKGROUND

The Florida Automobile Dealers Act, ch. 70-424, Laws of Fla., *codified at* Fla. Stat. § 320.60–.70 ("FADA" or "the Act"), regulates the relationship between automobile "distributors" and automobile "dealers."  Defendant Porsche is a "distributor," § 320.60(5).  As a distributor, Porsche imports German sports cars into the United States and distributes them to its dealers for resale.  Comp. ¶¶ 7–11.  Plaintiff Champion is a "dealer," 320.60(11)(a)1, and it is Porsche's largest.  *Id*. ¶ 24.  Since 1988, from its dealership in Broward County, Florida, Champion has sold more Porsches than any other dealer in the country.  *Id.*  In fact, Champion would sell more, but Porsche has denied Champion's requests for increased inventory.  *Id.* ¶ 22.  On September 5, 2013, Porsche informed Champion of its intent to add another dealer to Broward County.  *Id.* ¶ 74.

Champion attended a Porsche regional dealers' meeting on September 23, 2013 in Atlanta, Georgia.  *Id.* ¶¶ 39–40.  While there, a Champion employee photographed Porsche's presentation slides, which contained pictures of Porsche's new models.  *Id.* ¶ 45.  After finding the photographs on a third-party website, Porsche sued Champion for misappropriation in Georgia state court.  *Id.* ¶ 46, 55.  On November 8, 2013, a day after suing Champion, Porsche notified Champion it would terminate its franchise.  *Id.* ¶ 58.

On December 30, 2013, Porsche filed a required administrative notice in the Florida Administrative Register publishing its intent to add a dealership in Broward County (the "Penske dealership" or "Penske"). *Id.* ¶ 78. On January 29, 2014, the Florida Department of Highway Safety and Motor Vehicles (the "Department") approved the dealership. Def.'s Mot. to Dismiss Ex. A [ECF No. 18-1]; *see United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (permitting the Court to take judicial notice of public records in a motion to dismiss). Two days later, Champion filed this lawsuit. [ECF No. 1-2].

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### IV.  DISCUSSION

#### A.  COUNTS IV AND V:  UNFAIR SYSTEM OF DISTRIBUTION

Section 320.64 of the Florida Automobile Dealers Act enumerates conduct that is a violation of the Act. A dealer harmed by such a violation, "notwithstanding the existence of any other remedies under §§ 320.60–.70, has a cause of action . . . for damages." § 320.697. Likewise, a dealer harmed by such a violation, "notwithstanding the existence of any adequate

3

remedy at law, . . . is authorized to make application to any circuit court of the state for a grant . . . of a temporary or permanent injunction, or both . . . ." § 320.695. A dealer who alleges a violation of § 320.64 "shall be entitled to pursue all of the remedies, procedures, and rights of recovery available under §§ 320.695 and 320.697." § 320.64.

Champion claims Porsche violated § 320.64(18), which prohibits a distributor from "establish[ing]" or "implement[ing]" a "system of motor vehicle allocation or distribution to one or more of its franchised motor vehicle dealers" that is "unfair" or "inequitable." According to Champion, Porsche violated § 320.64(18) by "modify[ing] its system of distribution by adding an additional Porsche franchised dealer . . . ." Comp. ¶ 129. Due to Porsche's alleged violation of § 320.64(18), Champion seeks an injunction (Count IV), § 320.695, and damages (Count V), § 320.697.

### 1. EXCLUSIVITY AND EXHAUSTION

Porsche argues the Department's procedure under § 320.642(1) is Champion's exclusive remedy to challenge a new dealer, a remedy Champion has waived. Under the Act, when a distributor seeks to add a new dealer, it must notify the Department of Highway Safety and Motor Vehicles. § 320.642(1). The Department then publishes the notice in the Florida Administrative Register. *Id.* Dealers "with standing" then have 30 days to protest the addition. *Id.* In a county with more than 300,000 people, such as Broward,[1] a dealer has standing if it is located within 12.5 miles of the new dealer, or if it sells 25% of its new cars to customers who live within 12.5 miles of the new dealer. § 320.642(3)(b).[2] Upon timely protest, the Department

---

[1] Almost two million people live in Broward County. *Broward County, Florida*, U.S. Census Bureau, http://quickfacts.census.gov/qfd/states/12/12011.html (last visited Apr. 22, 2014).

[2] Champion does not state whether or not it would have satisfied this standing requirement.

4

must deny the new dealer unless the distributor proves that the protesting dealer does not "adequate[ly] represent[]" the distributor's brand. § 320.642(2)(a). According to Porsche, by not protesting Porsche's notice, Champion waived any remedy it may have. *See generally*, 2 Fla. Jur. 2d Admin. Law § 427 (2014) ("[W]here an administrative remedy is exclusive, no action at law or in equity will lie to enforce the statute.").

Florida courts have not addressed whether the Department procedure is the exclusive remedy to challenge a new dealer under § 320.642. However, they have addressed the exclusivity of § 320.641, a parallel provision to § 320.642. Under § 320.641 a dealer may protest the "unfair" termination of an existing dealer before the Department, just as under § 320.642 a dealer may protest the addition of a new one. As to § 320.641, the First District Court of Appeal has held that Department procedure is not an exclusive remedy; that is, a dealer who fails to protest a termination before the Department may file a complaint in Florida court. *See Barry Cook Ford, Inc. v. Ford Motor Co.*, 616 So. 2d 512 (Fla. 1st DCA 1993); *see also Bert Smith Oldsmobile, Inc. v. Gen. Motors Corp.*, 8:04CV2666T-27EAJ, 2005 WL 1210993, at *2 (M.D. Fla. May 20, 2005) ("Florida courts have interpreted Chapter 320 as authorizing administrative and judicial actions as alternative and cumulative remedies.") (citing *Barry Cook Ford*, 616 So. 2d at 516–17).

In *Barry Cook Ford*, Ford Motor Co. notified the Department that it intended to terminate its franchise agreement with a dealer. The dealer filed a complaint with the Department, and then filed a complaint for unfair termination in the circuit court. After the dealer voluntarily dismissed its Department proceeding, the circuit court dismissed the dealer's complaint, finding that by voluntarily dismissing its Department proceeding, the dealer waived its right to file a

5

complaint in circuit court. The district court of appeal reversed, holding that the Department procedure was not an exclusive remedy. The court reviewed the Florida Automobile Dealers Act and found that the legislature had not intended for Department procedure be exclusive:

First, the Act provides alternative remedies for the same harms. For example, if a dealer protests a termination under § 320.641, the termination is stayed under § 320.641 or may be enjoined under § 320.695. Moreover, the Act expressly states when court remedies can or cannot be sought. For example, under § 320.695, injunctive relief "shall not be applicable to any motor vehicle dealer after final determination by the department under § 320.641(3)." Likewise, under § 320.695 and § 320.697, the Act provides for damages and injunctive relief "notwithstanding the existence of any" other remedies. And, nowhere does the Act expressly confer exclusive jurisdiction on the Department. Finally, beyond exclusivity, the *Barry Cook Ford* court also held that a dealer need not exhaust its administrative remedies before proceeding in court. It reasoned that an exception to the exhaustion doctrine applied because the dealer sought damages, a remedy the Department procedure could not provide.

The *Barry Cook Ford* court's analysis of the statutory scheme applies here. Again, the Act provides alternative remedies for the same harms. If a dealer protests the addition of a dealer under § 320.642, the licensing is stayed under § 320.642(4) or may be enjoined under § 320.695. Further, as *Barry Cook Ford* explained, the Act provides for damages or injunctive relief "notwithstanding the existence of any" other remedies. And, nowhere does the Act expressly confer exclusive jurisdiction on the Department. Finally, Champion seeks damages, which the Department procedure cannot provide. The reasoning of *Barry Cook Ford*, then, dictates that § 320.641 is neither exclusive, nor requires exhaustion. By failing to protest the addition before

the Department, Champion did not waive its other remedies. However, whether adding a new dealer violates § 320.64(18), in this or any case, is a different question, discussed below.

### 2. VIOLATION OF THE FLORIDA AUTOMOBILE DEALERS ACT

Champion claims that establishing a new dealer "as part of [Porsche's] system of distribution" violates § 320.64(18). Although Porsche has denied Champion's request to increase its inventory, Porsche will provide the Penske dealership at least 900 new cars to sell. Comp. ¶ 156. Because Champion has insufficient inventory to serve its own customers, Penske must take vehicles or customers from Champion. According to Champion, establishing Penske is therefore unfair to Champion.

Under § 320.64(18), the following is prohibited:

> The applicant or licensee has *established a system of motor vehicle allocation or distribution or has implemented a system of allocation or distribution* of motor vehicles to one or more of its franchised motor vehicle dealers which reduces or alters allocations or supplies of new motor vehicles to the dealer to achieve, directly or indirectly, a purpose that is prohibited by ss. 320.60-320.70, or *which otherwise is unfair*, inequitable, unreasonably discriminatory, or not supportable by reason and good cause after considering the equities of the affected motor vehicles dealer or dealers . . . As used in this subsection, "unfair" includes, without limitation, the refusal or failure to offer to any dealer an equitable supply of new vehicles under its franchise, by model, mix, or colors as the licensee offers or allocates to its other same line-make[3] dealers in the state.

But, even if adding Penske constitutes "establish[ing] a system of . . . distribution," which the Court declines to hold, Champion has failed to allege that such a system would be

---

[3]
"Line-make vehicles" are those motor vehicles which are offered for sale, lease, or distribution under a common name, trademark, service mark, or brand name of the manufacturer of same. However, motor vehicles sold or leased under multiple brand names or marks shall constitute a single line-make when they are included in a single franchise agreement and every motor vehicle dealer in this state authorized to sell or lease any such vehicles has been offered the right to sell or lease all of the multiple brand names or marks covered by the single franchise agreement.

Fla. Stat. § 320.60(14).

unfair. A system of distribution is unfair in violation of § 320.64(18) if it, without good reason, distributes a benefit to a dealer that it does not distribute to another, similarly situated dealer. A benefit may be financial: for example, a system of distribution may be unfair if a manufacturer exempts a dealer from the advertising tax that all other dealers must pay. *See Action Nissan, Inc. v. Hyundai Motor America*, 617 F. Supp. 2d 1177 (M.D. Fla. 2008). A similarly situated dealer is one that, under its franchise agreement, sells the same line-make in the same market. *See Bert Smith Oldsmobile, Inc. v. General Motors Corp.*, No. 8:04CV2666T-27EAJ, 2005 WL 1210993 (M.D. Fla. May 20, 2005). So, a system of distribution to Oldsmobile dealers may only be unfair "as compared to other Oldsmobile dealers." *Id.* at *3.

Here, Champion does allege that Penske is a similarly situated dealer, as it will sell the same line-make, Porsche, as Champion and in the same market, Broward County, Florida. However, Champion does not allege that Porsche will distribute a benefit to Penske that it will not distribute to Champion. Porsche will distribute to Penske a starting inventory, just as Porsche has distributed to Champion an inventory. But Champion does not allege, for instance, that Porsche will replenish Penske's inventory more quickly than it will Champion's, or that Porsche will over time provide Penske a greater amount of cars than it will Champion.

Champion claims that Porsche's system of distribution is unfair because there is insufficient demand to support both it and the Penske dealership. According to Champion, any cars that Penske sells are cars that Champion would have sold. But, under this reasoning, for Porsche to add the Penske dealership and not provide Penske cars to sell would also be unfair, for any cars that Champion sells are cars that Penske would have sold. Under Champion's argument, in any saturated market, despite business considerations such as expanding consumer

8

access, any decision to distribute a car to one dealer and not to another is unfair, as every car one dealer sells is a car that the other dealer could have sold.  So, even if a manufacturer sought to distribute vehicles in equal amounts to two dealers, or in any other equitable distribution, such a distribution would be unfair, as each would sell a vehicle the other could have sold.  For Champion, then, to be fair is to be unfair.  Even if adding a new dealer is establishing a system of distribution, its establishment, alone, is insufficient to state a claim under § 320.64(18).  Although Champion alleges that adding a new dealer would cause it economic harm, it does not allege that adding a new dealership would be unfair.

### B.  COUNT VI: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

Count VI of the Complaint claims tortious interference with a business relationship.  Champion, with Porsche's consent, has filed a notice of amendment to withdraw this Count.  [ECF No. 28]; *see* Fed. R. Civ. P. 15(a)(12) ("[A] party may amend its pleading only with the opposing party's written consent or the court's leave.").  Although Champion reserves renewal of this Count until after discovery, the Court notes that, in Florida, a plaintiff cannot claim tortious interference with a business relationship when the defendant is a party to the relationship.  *See e.g., Genet Co. v. Annheuser-Busch, Inc.*, 498 So. 2d 683, 84 (Fla. 3d DCA 1986) ("[A] cause of action for tortious interference does not exist against one who is himself a party to the business relationship allegedly interfered with."); *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1294 (11th Cir. 2001) ("Under Florida law, a claim for tortious interference with contract cannot lie where the alleged interference is directed at a business relationship to which the defendant is a party."). Porsche is a party to the business relationship

between Champion and Porsche. Therefore, upon renewal, Champion will likely fail to state a claim for tortious interference with a business relationship.

### C. COUNT VII: FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

Count VII of the Complaint claims four violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201–.213, which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204(1). As its first claimed violation, Champion claims Porsche violates the FDUTPA by adding a dealership that will take business from Champion. This claim cannot stand. The FDUTPA exempts "any act or practice required or specifically permitted by federal or state law." § 501.212(1). Adding a dealership is permitted by a state law; in fact, the Department of Motor Vehicles specifically approved Porsche's adding a new dealership. Therefore, FDUTPA exempts this act.

As its second claimed violation, Champion claims Porsche violates the FDUTPA by suing Champion in Georgia with an "ulterior motive to either terminate or drive Champion out of business." This claim also fails, as the FDUTPA does not apply to lawsuits. Section 501.204 prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." According to Champion, filing a lawsuit with an "improper" or "ulterior" motive is an act or practice in the conduct of Porsche's trade or commerce. In other words, in conducting trade or commerce, Porsche filed a lawsuit which was an unfair act. Champion, then, reads § 501.204(1) as prohibiting a defendant's unfair or deceptive acts or practices in *its* conduct of trade or commerce. While Champion's reading makes sense, Florida courts read § 501.204(1) differently. Unlike Champion, they read § 501.204(1) to require that the act or practice *itself* be in the conduct of trade or commerce. In Florida, a lawsuit is not an act or practice in the conduct

10

of trade or commerce, regardless if the business that files the lawsuit is in the conduct of trade or commerce.  For example, a nursing home may, like Porsche, conduct trade or commerce.  But, when that nursing home files a lien to collect payment, that lien is not an act in the conduct of trade or commerce.  Instead, it is in "the pursuit of legal remedies," and therefore does not violate FDUTPA.  *See Baker v. Baptist Hosp., Inc.*, 115 So. 3d 123 (Fla. 4th DCA 2013).  Again, for example, a law firm may, like Porsche, conduct trade or commerce.  But, when that law firm presents false documents in foreclosure cases, that presentation is not an act in the conduct of trade or commerce.  Instead, it is in the "processing of foreclosure cases," and therefore does not violate FDUTPA.  *See State, Office of Att'y. Gen. v. Shapiro & Fishmnan, LLP*, 59 So. 3d 353 (Fla. 4th DCA 2011); *Law Office of David J. Stern, P.A. v. State*, 83 So. 3d 847 (Fla. 4th DCA 2011).  Therefore, because filing a lawsuit is not in the conduct of trade or commerce, the FDUTPA does not apply to Porsche's lawsuit against Champion.

As its third and fourth claimed violations, Champion claims that Porsche (1) caused Champion to spend millions of dollars to improve its dealership and (2) denied Champion additional inventory, all while intending to add a new dealer.  To establish a prima facie case for a violation of the FDUTPA, a plaintiff must show "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."  *E.g.*, *Wright v. Emory*, 41 So. 3d 290, 292 (Fla. 4th DCA 2010). For example, a franchisor who makes misleading statements that induce a potential franchisee to purchase a franchise can violate the FDUTPA.  *See KC Leisure, Inc. v. Haber*, 972 So. 2d 1069 (Fla. 5th DCA 2008); *Hetrick v. Ideal Image Dev. Corp.*, 758 F. Supp. 2d 1220 (M.D. Fla. 2010); *S & B Investments, LLC v. Motiva Enterprises, LLC*., 03-61993-CIV, 2004 WL 3250306 (S.D. Fla. Dec. 6, 2004).  Because whether a particular act or conduct, such as

11

allegedly causing a franchise to spend money while intending to undercut its competitiveness, is unfair or deceptive is "a question for the fact finder," *see e.g.*, *Witt v. La Gorce Contry Club, Inc.*, 35 So. 3d 1033, 1040 (Fla. 3d DCA 2010), the Court will permit Plaintiff's claims as to the improvement of the dealership and denial of increased inventory.

### D.  COUNT VIII: BREACH OF CONTRACT

Count VIII of the Complaint claims breach of contract.  The relevant contract is the franchise agreement, Comp. Ex. 1–3, in the introduction to which the parties agree that:

> Porsche and [Champion] shall refrain from conduct which may be detrimental to or adversely reflect upon the reputation of PORSCHE AG, Porsche, [Champion] or PORSCHE PRODUCTS in general.

*Id.* Ex. 1, at 1.

The franchise agreement also provides that "[Champion] acknowledges that its appointment as an Authorized Porsche dealer does not grant it an exclusive right to sell PORSCHE PRODUCTS in any specified geographic area or limit the rights of Porsche, subject to applicable law, to appoint other authorized Porsche dealers at any locality of Porsche's choice."  Pl.'s Comp. Ex. 1, at 2 § 1 (Champion Dealer Agreement).  Further on, it provides that "Subject to applicable law, Porsche may add, relocate, or replace dealers in [Champion's] PAR.[4]"  Pl.'s Comp. Ex. 3 § C.2 (Champion Standard Provisions).

Champion reads the introduction to the franchise agreement to prohibit Porsche "from conduct which may be detrimental" to *Champion*.  Porsche reads the introduction to prohibit Porsche "from conduct which may be detrimental" to Champion's *reputation*.  According to Champion, because a new dealer will economically harm Champion, Champion states a claim

---

[4] Primary Area of Responsibility.

that adding a new dealer is detrimental to it. According to Porsche, because Champion has not alleged Porsche injured Champion's reputation, Champion's claim should be dismissed. Alternatively, Porsche argues that, because the franchise agreement grants it discretion to add dealers, Porsche has not breached the contract.

To Champion, the object of "detrimental to" is Porsche. To Porsche, the object of "detrimental to" is "the reputation of" Porsche. If commas surrounded the phrase "or adversely reflect upon," then the contract would be clear, and Porsche's interpretation would govern. But, because each party's interpretation is reasonable, the sentence is at least ambiguous. *See BKD Twenty-One Mgmt. Co., Inc. v. Delsordo*, 127 So. 3d 527, 530 (Fla. 4th DCA 2012) ("[C]ontractual language is ambiguous only if it is susceptible to more than one *reasonable* interpretation.") (emphasis in original). A reading may be reasonable if an alternative reading depends on the presence of absent commas. *See Jones v. Treasure*, 984 So. 2d 634 (Fla. 4th DCA 2008) (remanding to develop evidence of intent when an agreement stated that "These monthly payments shall be payable by QDRO and shall cease in accordance with the plan upon the death of the W if permitted by the plan," because the parties could reasonably disagree whether, without commas around "and shall . . . W," the phrase "if permitted by the plan" modified either "payable" or "cease").

However, while this isolated sentence may be ambiguous, the contract is not. Even assuming Champion's reading, the franchise agreement permits Porsche to add dealerships, regardless of the detriment to Champion. "[W]here there are general and special provisions in a contract relating to the same thing, the special provisions will govern its construction over matters stated in general terms." *Ibis Lakes Homeowners Ass'n v. Ibis Isle Homoeowners Ass'n*,

13

102 So. 3d 722, 728 (Fla. 4th DCA 2012) (internal quotation marks omitted).  Therefore, the general provision prohibiting conduct detrimental to Porsche is superseded by the special provision permitting Porsche to add dealerships.  Champion responds that, because these provisions are "subject to applicable law," if the Court finds that adding a dealership violates the FADA or the FDUTPA, then they do not apply, and the provision prohibiting detrimental conduct supports a claim for breach of contract.  But, because the Court has found that adding a dealership does not violate the FADA, and because only Porsche's alleged representations and denial of inventory, not its adding a dealer, may have violated FDUTPA, Champion alleges no breach of contract.

### E.  COUNT IX: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Count IX of the Complaint claims breach of the implied covenant of good faith and fair dealing.  A covenant of good faith and fair dealing is implied in every contract.  *Insurance Concepts and Design, Inc. v. Healthplan Services, Inc.,* 785 So. 2d 1232, 1234 (4th DCA 2001).  To claim a breach of the covenant, a plaintiff must allege that the defendant breached an "express term" of the contract.  *Id.*  In this case, Champion claims that Porsche breached "the express agreement to refraining [sic] from conduct which is detrimental to Champion."  Comp. ¶ 174.  But, as explained, Porsche did not breach that isolated sentence.  Because Champion does not allege that Porsche violated an express term of the contract, Champion does not state claim a breach of the implied covenant of good faith and fair dealing.

### V.  CONCLUSION

For the aforementioned reasons, it is hereby

**ORDERED** and **ADJUDGED** that:

1. Defendant Porsche Cars North America, Inc.'s ("Porsche") Motion to Dismiss [ECF No. 18] is **GRANTED IN PART**.

   a. Counts IV, V, VIII, and IX are **DISMISSED WITH PREJUDICE**.

   b. Count VII is **DISMISED WITH PREJUDICE** as to the claims against Defendant for adding a dealer, Comp. ¶ 156(3), and asserting a complaint in Georgia, *Id.* ¶156(4).

2. Defendant's Request for Oral Argument on Motion to Dismiss [ECF No. 19] is **DENIED**.

3. Plaintiff's Request for Oral Argument on Defendant's Motion to Dismiss [ECF No. 27] is **DENIED**.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida this 11th day of June, 2014.

Daniel T. K. Hurley
United States District Judge

*Copies provided to counsel of record*